J. C. RUSS and WILLIAM M. EASLEY, Appellants, v. JOHN A. HOPE.

Division Two, July 6, 1915.

1. **LACHES: Quieting Title.** Where the land is timbered, wild and unimproved and has never been in the possession of any one, the doctrine of laches is not available to either side in a suit to determine the title, since there is no evidence upon which its application may be justified.

2. **QUIETING TITLE: Description of Land: Carleton's Abstract: Explanation on Margin: Grantor's Intention.** Where the land records had been burned, and Carleton's Abstract, made evidence by statute, headed "Section 7, Township 17 north, of Range 11

east," described the land conveyed by deed as "Parts of Section: a, b, c, d, e, f, g, h, i, j, o, p, k, l," each letter being meant to designate a forty acres, and, therefore, the letters k and l the north half of the southwest quarter, accompanied by an explanation on the margin reading: "In last description of 80 acres k, l no section is mentioned. In all probability section 7 was intended; but record does not say so," it cannot be held that the abstract describes land in section 7, for the explanatory note states the fact to be that the deed record does not state the section in which k and l are located. To this extent the note is just as competent to evidence title, or want of title, as any other portion of the abstract; but that part of it in which the abstracter states his conclusion as to what the grantor's intention may have been is not competent evidence of title.

3. ————: *Purpose of Suit: Reforming Deed.* A suit to quiet the title between adverse claimants is one to determine the existing title as shown by deeds and records, and is not an action to reform a deed found in any chain of title; and hence a grantor's intention concerning any land not conveyed by his deed is immaterial.

4. **TAX SUIT: Service Upon Non-resident: Presumption.** Where the evidence is that the owner of the land at the time of the tax suit was a non-resident of the State, and is silent as to the kind of service had upon him in that suit, it is fairly justifiable to conclude that the service of process was by publication.

5. ————: ————: **By Publication: By Initials Only.** Service of process in a tax suit by publication directed to W. G. Easley was insufficient as against William G. Easley, and a sheriff's deed based upon a judgment rendered in pursuance to said publication did not convey the interest of William G. Easley in said land.

6. ————: ————: **By Personal Service: Identification of Defendant.** W. G. Easley and William G. Easley are not the same name and are not *idem sonans*, and no inference or presumption will arise from the mere statement of the two names that they were one and the same person. Where William G. Easley was the owner of the land and there was personal service upon W. G. Easley in the tax suit, and there is no proof that W. G. Easley was the William G. Easley who owned the land, a sheriff's sale and deed under the tax judgment against W. G. Easley will not be held to have conveyed the title of William G. Easley.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED (*with directions*).

*Brewer & Riley,* for appellants.

(1) The ten-year Statute of Limitation does not apply in this case for the reason the proof shows that the land was not in the actual possession of any one and had never been and that the land is wild, unimproved timber land. (2) The law of laches does not apply in this case. The proof shows that the land is wild, unimproved, timber land and not in possession of any one. Russ v. Sims, 169 S. W. 69. (3) The note on Carleton's Abstract to the entry thereon showing a conveyance from William G. Easley to Isaac Bracken is a part of said entry and this note shows that the land in question was not conveyed. R. S. 1909, secs. 6415, 6417. This note being on the abstract is a part of it and shows that the land in question was not conveyed by said deed from William G. Easley to Isaac Bracken. When Carleton put k. l. in said entry he put it there because he was of the opinion that k. l. was intended to be conveyed and that the grantor William G. Easley intended to convey. This is the opinion of the abstracter, but no facts are stated by him showing upon what he based that opinion. But he says emphatically that the deed being abstracted by him did not show that k. l. was in section 7. (4) The plaintiffs are not estopped, for the following reasons: (a) Carleton's Abstract shows the land was not conveyed by William G. Easley and this fact could have been known by the defendant before he bought the land in question. Though silence in some cases will estop a party from speaking afterwards, yet "it is only when it becomes a fraud that it postpones." If, therefore, the truth be known to both parties, or if they have equal means of knowledge there can be no estoppel. If a man holds title to his lands by deed which has been duly recorded, it is all the notice he is bound to give so long as he remains passive. Bayles v. Perry, 51 Mo. 453, cited and approved in Golterman v. Schier-

meyer, 125 Mo. 299; Hequembourg v. Edwards, 155
Mo. 522. (b) Nor will mere silence or some act done
where the means of knowledge are equally open to
both parties, estop the party doing the act or remaining
silent.    Blodgett v. Perry, 97 Mo. 273.    It is held
in Dameron v. Jamison that a purchaser at tax sale
was bound by defects shown by the record and he could
not plead estoppel. Dameron v. Jamison, 143 Mo. 491;
Myers v. DeLisle, 168 S. W. 678.    (5)    Conceding there
was a sale for taxes in a suit against W. G. Easley, yet
said sale would be void for the reason the proof shows
that William G. Easley was a non-resident from 1859
to the year 1896 and that the certificate of purchase
was not issued to W. G. Easley but to William G.
Easley.   As a matter of course Easley, if sued, was
brought into court by order of publication and that was
not directed against William G. Easley but directed to
W. G. Easley.

   *John A. Hope* and *Ernest A. Green* for respond-
ent.

   WILLIAMS, C.—This is a suit under section
2535, Revised Statutes 1909, to determine the title to
the north half of the southwest quarter of section 7,
township 17 north, of range 11 east, in Pemiscot coun-
ty, Missouri.   The suit originated in the circuit court
of Pemiscot county, but was taken on change of venue
to Butler county, where trial was had before the court
without a jury, resulting in a judgment in favor of the
defendant.   William G. Easley, the common source of
title, acquired title to this land, September 12, 1858.
He died in 1896.   The plaintiff, William M. Easley, is
a son of said William G. Easley, deceased.   Plaintiff
Russ is the grantee of the other surviving heirs of
said William G. Easley, in deeds dated January 30,
1906.   Defendant undertakes to show title by two dif-

ferent chains of title originating in the said common source. One of said chains of title is as follows:

1.  Quitclaim deed from William G. Easley and wife to Isaac Bracken, dated October 2, 1858. (It is contended by plaintiff that this deed did not convey the land in question. This proposition will be discussed in the opinion).

2.  Deed from Bracken to Hinman.

3.  Deed from Hinman to Hinman.

4.  Deed from Hinman to Merchants National Bank of Cincinnati, Ohio.

5.  Deed from the Merchants National Bank of Cincinnati, Ohio, to J. E. Franklin, dated December 1, 1909.

6.  Warranty deed from J. E. Franklin to John A. Hope, defendant herein, dated November 7, 1908.

Defendant's other chain of title is as follows:

a.  Sheriff's deed, reciting sale of the land in question under execution issued on a judgment for taxes against "W. G. Easley," conveying the property to Virgil P. Adams. The sale occurred November 4, 1879; deed dated March 10, 1880.

b.  Deed from Virgil P. Adams to Benjamin F. Barcroft.

c.  Deed from Benjamin F. Barcroft to Thomas B. Simms.

d.  Deed from Thomas B. Simms to J. E. Franklin.

e.  Deed from said J. E. Franklin to John A. Hope, defendant herein.

There was also another sheriff's deed for taxes reciting the sale of the land upon execution based upon a judgment for taxes rendered against the Merchants National Bank of Cincinnati, Ohio. The sale occurred November 4, 1879, the deed was dated March 10, 1880, and the land was conveyed to Virgil P. Adams.

The evidence tended to show that this land is what is known as swamp land, and is wild, timbered and unimproved and has not been in the possession of any one.

The evidence tended to show that said William G. Easley left Pemiscot county in the year 1859, moving to the State of Tennessee, where he resided to the time of his death in 1896. It was shown in evidence that all of the circuit court records and the records in the recorder's office of Pemiscot county were destroyed by fire in 1882. It was also admitted that abstracts of record known as the "Carleton Abstracts" had been properly certified by the judges of the county court and circuit court of Pemiscot county, and that the same were admissible under section 6415, Revised Statutes 1909.

The circuit court found that defendant had acquired by mesne conveyances all of the interest and title in said land which was originally owned by William G. Easley. The court further found that defendant was also entitled to recover on the ground of laches. Such further facts as are necessary to an understanding of the issues raised will be set forth in the opinion.

## OPINION.

The defendant Hope by mesne conveyances became vested with whatever title passed to the respective grantees in the deeds executed, October 2, 1858, by William G. Easley and wife to Isaac Bracken and in the sheriff's deed dated March 10, 1860, based upon a sale under execution issued upon a tax judgment against W. G. Easley. If either of the two above mentioned deeds conveyed the title of William G. Easley in this land the defendant is the owner and the judgment of the circuit court is correct. If neither of these deeds conveyed or divested William G. Easley

of his title, then the plaintiffs as heir and grantee of the heirs of said William G. Easley, are the owners of said land and entitled to recover.

The trial court was of the opinion that defendant might also recover on the theory of laches upon the part of plaintiffs and those under whom they claim, but we are unable to find any evidence that would justify the application of the doctrine of laches to this case.

I.  Did the title of William G. Easley to this land pass by the deed to Bracken, October 2, 1858?  We think not.  All the evidence concerning this deed is gathered from the entries contained in Carleton's Abstract on the page headed, "Carleton's Abstract, Section 7, Township 17 North, of Range 11 East," which were as follows:

**No Description of Land in Deed.**

"Grantor, William G. Easley and wife;

"Grantee, Isaac Bracken;

"Quantity 560 acres.  Parts of section: a, b, c, d, e, f, g, h, i, j, o, p, k, l.  Consideration per acre $1.13. Date of instrument, October 2d, 1858.  Date of filing: November 2d, 1858; Book B. page 33.  Dower relinquished."

Under the head of "Explanation" on the same page was the following in the handwriting of the maker of said abstract, viz.; "In last description of 80 acres, k, l no section is mentioned.  In all probability section 7 was intended; but record does not say so."

It appears from the evidence in this case that the abstracter used the small letters from a to p both inclusive to designate the sixteen different forty acre tracts of each section.  The upper or northern row of forty acre tracts, beginning at the northeast corner of the section were designated respectively as a, b, c, d; the second row, beginning at the west were designated as e, f, g, h; the third row beginning at the east were

designated as i, j, k, l; and the bottom or southern row beginning at the west were designated as m, n, o, p. It thus appears that k, l, r. 'erred to in said explanatory note was the north half of the southwest quarter, which, if it were located in *section* 7, township 17, range 11, would be the land involved in this suit; but said note states the fact to be that the deed record does not state the section in which k, l, is located. This explanatory note in so far as it states a fact concerning the record is just as competent to evidence title, or want of title, as any other portion of the abstract. The very purpose of an abstract is to state briefly the facts shown or disclosed by the record. Of course, the statement in said explanation of the abstracter's conclusion as to what the grantor's intention may have been would not be competent evidence of title. This is a suit to determine the existing title as shown by the record and is not an action to reform the deed, and therefore the grantor's intention concerning any land not conveyed by the deed would be immaterial in the present action.

II. Did the sheriff's deed based upon the tax proceedings against W. G. Easley convey the title of William G. Easley in said land? At that time the record title stood in the name of William G. Easley. The evidence in this case shows that William G. Easley, at the time of this tax proceeding, was a non-resident of Missouri. The evidence is silent with reference to the kind of service had upon defendant in the tax suit, but because of the fact that William G. Easley was a non-resident, at that time, we think the inference fairly justifiable that the service of process in the tax suit was by publication.

**Publication in Tax Suit.**

Service of process in a tax suit by publication directed against W. G. Easley would not be sufficient as against William G. Easley, and the sheriff's deed based upon a sale had under said judgment would not

convey the interest of William G. Easley in said land. [Turner v. Gregory, 151 Mo. 100; Vincent v. Means, 184 Mo. 327; Spore v. Land Co., 186 Mo. 656; Gillingham v. Brown, 187 Mo. 181; Ohlmann v. Sawmill Co., 222 Mo. 62.]

Would the situation be stronger if it should be assumed, *arguendo,* that personal service was had against W. G. Easley in the tax suit? Under the present evidence, we think not. We would then be confronted with a question as to identity without any evidence sufficient for its solution. Since W. G. Easley and William G. Easley are not the same name and are not *idem sonans,* there would be no inference or presumption arising from the mere statement of the two names that they were one and the same person. We know of no rule which would justify the inference or presumption that William G. Easley, the grantee in a deed, is the same person as W. G. Easley who afterwards is made an involuntary party to a tax proceeding concerning the same land. The burden of proving identity would certainly be upon the party whose title depends upon the proof of such identity; in the present case upon the respondent.

**Personal Service: Identification of Defendant in Tax Suit.**

The judgment is reversed and the cause remanded with directions to the circuit court to enter judgment in favor of the plaintiffs. *Roy, C.,* concurs.

PER CURIAM—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Brown* and *Walker, JJ.,* concur; *Faris, P. J.,* not sitting.